STEVEN L. FRIEDLANDER (SBN 154146)
BARBARA L. HARRIS CHIANG (SBN 206892)
SV EMPLOYMENT LAW FIRM PC
160 Bovet Road, Suite 401
San Mateo, California 94402
Telephone:      (650) 265-0222
Facsimile:      (650) 265-0223
Email:          sfriedlander@svelf.com
                bchiang@svelf.com

Attorneys for Defendant and Counter-Claimant
ASTRONAUT, INC. and Defendant AYOOLA JOHN-MUYIWA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS VOLZER, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ASTRONAUT, INC., a Delaware corporation; AYOOLA JOHN-MUYIWA, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 4:25-cv-07839-KAW<br><br>**DEFENDANTS' ANSWER TO COMPLAINT; COUNTER CLAIM FOR**<br>**(1) BREACH OF CONTRACT**<br>**(2) BREACH OF DUTY OF LOYALTY**<br>**(3) CONVERSION**<br>**(4) BUSINESS AND PROFESSIONS CODE § 17200;**<br>**AND DEMAND FOR JURY TRIAL**<br><br>Complaint Filed:      September 15, 2025 |

Defendants Astronaut, Inc. ("Astronaut" or the "Company") and Ayoola John-Muyiwa ("John-Muyiwa") (collectively "Defendants") hereby submit their Answer to Complaint of plaintiff Chris Volzer ("Plaintiff"). Defendants reserve the right to amend, and, or strike affirmative defenses as discovery ensues or due to any inadvertence. All facts not specifically admitted or denied are denied.

## INTRODUCTION

1.      Answering Paragraph 1 of the Complaint, Defendants admit Plaintiff was a co-founder of Astronaut and that he was terminated from the Company. Defendants deny the remaining allegations of said paragraph.

2.      Answering Paragraph 2 of the Complaint, Defendants deny the allegations in said paragraph.

3.      Answering Paragraph 3 of the Complaint, Defendants admit Plaintiff was an employee, shareholder, and co-founder of Astronaut and deny Plaintiff is an individual residing in Massillon, Ohio. Defendants assert that during the relevant time period Plaintiff reported to Astronaut that he resided at 3199 Clay St., Apt. 12, San Francisco, California, 94115, with Andreea Anicai, his once girlfriend and now fiancée. Defendants deny the remaining allegations in said paragraph.

4.      Answering Paragraph 4 of the Complaint, Defendants admit the allegations in said paragraph.

5.      Answering Paragraph 5 of the Complaint, Defendants admit John-Muyiwa is the Chief Executive Officer of Astronaut and that during all relevant times, John-Muyiwa resided in San Francisco, California.  Defendants deny the remaining allegations in said paragraph.

6.      Answering Paragraph 6 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations, and on that basis, deny each and every factual allegation contained in said paragraph.

7.      Answering Paragraph 7 of the Complaint Defendants deny Plaintiff is an individual residing in Massillon, Ohio.  Defendants assert that during the relevant time period Plaintiff reported to Astronaut that he resided at 3199 Clay St., Apt. 12, San Francisco, California, 94115, with Andreea Anicai, his once girlfriend and now fiancée.  Defendants further deny that John-Muyiwa resides in Houston, Texas, on the grounds John-Muyiwa resides in California.  To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

8.      Answering Paragraph 8 of the Complaint, Defendants admit that Astronaut conducted business in and Plaintiff worked for the Company in the State of California. As for the allegations in this paragraph that contain legal argument and not factual allegations, Defendants neither admit nor deny such allegations because the law and its application are for the Court's determination.  To the extent this

paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

9.      Answering Paragraph 9 of the Complaint,  Defendants admit that John-Muyiwa conducted business on behalf of the Company in the State of California. As for the allegations in this paragraph that contain legal argument and not factual allegations, Defendants neither admit nor deny such allegations because the law and its application are for the Court's determination.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

## DIVISIONAL ASSIGNMENT

10.      Answering Paragraph 10 of the Complaint, the allegations in this paragraph contain legal argument and not factual allegations, Defendants neither admit nor deny such allegations because the law and its application are for the Court's determination.

## GENERAL ALLEGATIONS

11.      Answering Paragraph 11 of the Complaint, Defendants admit Plaintiff and John-Muyiwa met at Faves, that John-Muyiwa led the product team and Plaintiff lead the engineering team, that they collaborated and built a working relationship.  To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

12.      Answering Paragraph 12 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations regarding Plaintiff's thoughts and feelings, and on that basis, deny each and every related factual allegation contained in said paragraph. To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

13.      Answering Paragraph 13 of the Complaint, Defendants deny Astronaut was initially conceptualized to combat the loneliness epidemic spurred by COVID.  Astronaut was conceptualized in June 2022 by Defendant John-Muyiwa. In April 2023, Defendant John-Muyiwa and Volzer sought to build a product that made it easier for people to connect with one another by introducing them to others based on shared interests and social similarities. To the extent this paragraph contains any other factual allegations, Defendants admit each and every remaining factual allegation contained in said paragraph.

14.     Answering Paragraph 14 of the Complaint, Defendants admit that John-Muyiwa was Astronaut's Chief Executive Officer, President, Chief Financial Officer, Treasurer, and Secretary. To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

15.     Answering Paragraph 15 of the Complaint, Defendants deny the interview for the accelerator was contingent on quickly producing a prototype and admit the remaining factual allegations in said paragraph.

16.     Answering Paragraph 16 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that Plaintiff arrived in San Francisco on April 17, 2023 around 6:00 p.m. PT.  Plaintiff did not code for several days because he and John-Muyiwa were preparing for an interview with Hf0.

17.     Answering Paragraph 17 of the Complaint, Defendants admit that Plaintiff and John-Muyiwa failed to be accepted into the accelerator and in response.  Defendant denies: "in the process they were able to secure funding and decided to quit their respective jobs to pursue Astronaut full time." John-Muyiwa quit his job and resigned from his employer before learning that the pair did not get accepted to the accelerator. John-Muyiwa did not secure funding for Astronaut through the process of applying to the accelerator and instead secured funding for Defendant Astronaut directly through John-Muyiwa's personal network, unrelated to the accelerator.  To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

18.     Answering Paragraph 18 of the Complaint, Defendants admit the allegations in said paragraph.

19.     Answering Paragraph 19 of the Complaint, Defendants admit that John-Muyiwa made several equipment purchases. To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

20.     Answering Paragraph 20 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that Plaintiff never raised the issue of finances with John-Muyiwa and they did not make an agreement not to upgrade any flights and to be more mindful of expenses.

21.     Answering Paragraph 21 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that after John-Muyiwa learned that potential customers were not interested in Astronaut's initial product, he shared his learnings with Plaintiff and the two agreed to try developing a different product. To the extent this paragraph contains thoughts on what Plaintiff believed, Defendants neither admit nor deny such allegations because Defendants cannot ascertain what Plaintiff believed.

22.     Answering Paragraph 22 of the Complaint, Defendants assert that John-Muyiwa learned from Astronaut's potential customers that they were interested in a ChatGPT-style product for community sentiment analysis. John-Muyiwa shared this new insight with Plaintiff and Plaintiff expressed excitement about this potential product.  To the extent this paragraph contains Plaintiff's commitments, Defendants neither admit or deny such allegations because Defendants cannot ascertain what Plaintiff was committed to.

23.     Answering Paragraph 23 of the Complaint, Defendants admit to the extent that Plaintiff and John-Muyiwa moved to San Francisco. To the extent this paragraph contains any other factual allegations, Defendants deny each and every factual allegation contained in said paragraph.

24.     Answering Paragraph 24 of the Complaint, Defendants admit that Victoria Liang was hired as the Head of Growth.  Defendants deny that John-Muyiwa placed in minimal effort toward generating revenue. Defendants assert that between December 2023 and May 2024, Astronaut's revenue grew 171% from John-Muyiwa's sales effort. To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

25.     Answering Paragraph 25 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that Liang was hired on April 1, 2024, the engineer was hired on April 15, 2024, and the designer was hired in September 2023 as a contractor before converting full time.

26.     Answering Paragraph 26 of the Complaint, Defendants deny the allegations in said paragraph.

27.     Answering Paragraph 27 of the Complaint, Defendants admit that John-Muyiwa attended multiple conferences in 2024, including a conference in Paris.  Defendants deny that John-Muyiwa failed to generate leads despite attending multiple conferences in 2024.  Defendants assert that John-Muyiwa generated relevant leads for Astronaut at every conference he attended in 2024. To the extent this paragraph

contains Plaintiff's observations and opinions, Defendants neither admit nor deny such allegations because Defendants cannot ascertain Plaintiff's thoughts. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

28.     Answering Paragraph 28 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that Astronaut's revenue was around $16,649 in 2024.

29.     Answering Paragraph 29 of the Complaint,  Defendants admit the allegations.

30.     Answering Paragraph 30 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that it was Plaintiff that rarely attended customer meetings, not John-Muyiwa.

31.     Answering Paragraph 31 of the Complaint, Defendants admit Astronaut used Gusto software and deny the remaining allegations in said paragraph.

32.     Answering Paragraph 32 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that there was no evidence of unusual spending patterns following an independent expense review conducted by Astronaut's accounting firm, legal counsel, and the Independent Director of the Company's Board. John-Muyiwa did not engaged in personal indulgences; Plaintiff misrepresents a Company laptop purchase as a "video game bundle."  Victoria Liang was never prevented from purchasing a work laptop when she joined Astronaut in 2024. John-Muyiwa did not engage in destructive spending. Instead, it was Plaintiff that engaged in excessive spending that were all expensed to Astronaut, including a $2,957.51 laptop, $4,338.50 in personal relocation, $200.13 headphones, and $8,476.54 in new Apple "office supplies."   To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

33.     Answering Paragraph 33 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations because Defendants do not know of the conversations that Plaintiff engaged in, and on that basis, deny each and every factual allegation contained in said paragraph.

34.     Answering Paragraph 34 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that John-Muyiwa's NFT purchases were not financial misconduct as they

were made in relation to obtaining access to prospective customer communities. John-Muyiwa's hotel stay in Lagos, Nigeria was necessary in order to obtain access to the internet to perform work.  The tire purchase was necessary to replace the tires on a Company-expensed rental car after it had blown out.  The expresso machine was purchased for and located in the Airbnb Plaintiff and John-Muyiwa worked from, which Plaintiff used daily.  Although John-Muyiwa did take business-related Uber rides in 2024, all were necessary in order for John-Muyiwa to successfully generate $16,649 in direct sales revenue and to secure $2.2 million in equity financing.

35.    Answering Paragraph 35 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that Astronaut generated $16,649 in revenue in 2024 and had $2,340,083 in the bank by the end of 2024. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

36.    Answering Paragraph 36 of the Complaint, Defendants deny the allegations in said paragraph. To the extent this paragraph contains Plaintiff realizations, Defendants neither admit nor deny such allegations because Defendants cannot ascertain Plaintiff's thoughts.

37.    Answering Paragraph 37 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that John-Muyiwa did not make any admission of guilt to Plaintiff regarding personal charges. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

38.    Answering Paragraph 38 of the Complaint, Defendants deny the allegations in said paragraph.  Defendants assert that John-Muyiwa's actions never undermined Astronaut and that the Company was not at financial risk.

39.    Answering Paragraph 39 of the Complaint, Defendants admit that Plaintiff and John-Muyiwa collaborate together in Astronaut's San Francisco office between January 16, 2025 to July 31, 2025.  To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

40.    Answering Paragraph 40 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations because Defendants does not know about

the conversations between Liang and Plaintiff, and on that basis, deny each and every factual allegation contained in said paragraph.

41.     Answering Paragraph 41 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations because Defendants does not know about the conversations between Liang and Plaintiff, and on that basis, deny each and every factual allegation contained in said paragraph.

42.     Answering Paragraph 42 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations because Defendants does not know about the conversations between Plaintiff and other third-parties, and on that basis, deny each and every factual allegation contained in said paragraph.

43.     Answering Paragraph 43 of the Complaint, Defendants assert that Plaintiff developed the Supergram product between April 8, 2025 to May 15, 2025.  To the extent, this paragraph contains factual allegations regarding how tirelessly Plaintiff worked on the Supergram product, Defendants lack sufficient knowledge of the facts to admit or deny such allegations, and on that basis, deny such factual allegations in said paragraph. To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

44.     Answering Paragraph 44 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations because Defendants does not know about the conversations between Plaintiff and other third-parties, and on that basis, deny such factual allegations contained in said paragraph.

45.     Answering Paragraph 45 of the Complaint, Defendants admit that Plaintiff, Liang, and John-Muyiwa attended the Consensus 2025 Conference in Toronto from May 13, 2025 to May 16, 2025. To the extent this paragraph contains factual allegations regarding Plaintiff's thoughts and observations, Defendants lack sufficient knowledge or information of the facts to admit or deny such allegations, and on that basis deny such factual allegations contained in said paragraph.

46.     Answering Paragraph 46 of the Complaint, Defendants deny that John-Muyiwa did not attend a single session of the 2025 Consensus Conference in Toronto.  Defendants deny that John-Muyiwa burned through $8,000 to $10,000 for his conference trip to Dubai.  Defendants assert that the total cost

for John-Muyiwa's conference trip to Dubai was $2,435.89 for flights and hotel. To the extent this paragraph contains factual allegations regarding Liang's observations and conversations, Defendants is without sufficient knowledge or information to form a belief as to the truth of said allegations, and on that basis denies. To the extent this paragraph contains any other factual allegations, Defendants deny each and every remaining factual allegation contained in said paragraph.

47.    Answering Paragraph 47 of the Complaint, Defendants admit that Plaintiff and John-Muyiwa met in Oakland, CA on May 19, 2025 and engaged in conversation for over three hours that ended late and unresolved.  To the extent this paragraph contains any other factual allegations, Defendants deny each and every factual allegation contained in said paragraph.

48.    Answering Paragraph 48 of the Complaint, Defendants admit that Plaintiff and John-Muyiwa met at Salesforce Park in the afternoon on May 20, 2025 where Plaintiff stated that he wanted to resign; both parties also began negotiation the terms of Plaintiff's separation.  To the extent, this paragraph contains Plaintiff's doubts regarding John-Muyiwa's sincerity, Defendants are without sufficient knowledge or information to form a belief as to Plaintiff's doubts, and on that basis denies. To the extent this paragraph contains any other factual allegations, Defendants deny each and every factual allegation contained in said paragraph.

49.    Answering Paragraph 49 of the Complaint, Defendants admit the allegations in said paragraph.

50.    Answering Paragraph 50 of the Complaint, Defendants admit that a meeting was held on May 24, 2025 between Plaintiff and John-Muyiwa.  Defendants assert that in that meeting, Plaintiff suggested requesting an independent 409A valuation to ascertain the value of Plaintiff's shares – to which Defendant agreed. To the extent this paragraph contains any other factual allegations, Defendants deny each and every factual allegation contained in said paragraph.

51.    Answering Paragraph 51 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that on May 28, 2025, John-Muyiwa never made an offer to repurchase Plaintiff's shares because there was no 409A valuation available. It was not until June 1, 2025 did Astronaut submit a 409A valuation request to Carta. To the extent this paragraph contains any other factual allegations

that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

52.    Answering Paragraph 52 of the Complaint, Defendants admit that Plaintiff and John-Muyiwa spoke on the phone on June 5, 2025 for one minute.  Defendants deny that during this June 5, 2025 call, an offer was made to Plaintiff regarding his vested shares.  Defendants assert that during this June 5, 2025, John-Muyiwa shared that the 409A-valuation report was ready and valued at $0.04 per share. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

53.    Answering Paragraph 53 of the Complaint, Defendants are without sufficient knowledge or information to form a belief as to the factual allegations contained in said paragraph, and on that basis denies.

54.    Answering Paragraph 54 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that on June 10, 2025, John-Muyiwa texted Plaintiff to schedule a call for the day, with the intent to formalize Plaintiff's resignation and to propose a separation agreement.

55.    Answering Paragraph 55 of the Complaint, Defendants admit that Plaintiff's access to Slack and Github were disabled and that Plaintiff was asked to submit a letter of resignation and to provide access rights to infrastructure by June 12, 2025.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

56.    Answering Paragraph 56 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations because Defendants are unaware of the conversations between Liang and Plaintiff, and on that basis, deny each and every factual allegation contained in said paragraph.

57.    Answering Paragraph 57 of the Complaint, Defendants admit that on June 12, 2025, Plaintiff emailed John-Muyiwa clarifying that he had never agreed to resign from his role at Astronaut on May 19, 2025, and that Plaintiff requested that his lawyer be connected with Astronaut's lawyers. Defendants deny that the May 19, 2025 meeting's focus was on the John-Muyiwa's misuse of funds. To

1  the extent this paragraph contains any other factual allegations that have not already been denied,

2  Defendants deny each and every factual allegation contained in said paragraph.

3      58.    Answering Paragraph 58 of the Complaint, Defendants admit that the June 13, 2025, the

4  special board meeting with the agenda of formally terminating Plaintiff's employment with Astronaut was

5  cancelled.  Defendants admit that Plaintiff sent John-Muyiwa an email attaching two screenshots of

6  receipts and alleging that such purchases made by John-Muyiwa constituted as misconduct. Defendants

7  assert that Plaintiff threatened John-Muyiwa with such screenshots, stating that if John-Muyiwa failed to

8  respond to him by Monday, June 16, 2025, he would release the screenshots to Astronaut's Board of

9  Directors.  Defendants deny that John-Muyiwa recklessly removed Plaintiff's access to Astronaut's system

10  and that such actions would have subsequently prevented the system from working correctly. To the extent

11  this paragraph contains any other factual allegations that have not already been denied, Defendants deny

12  each and every factual allegation contained in said paragraph.

13      59.    Answering Paragraph 59 of the Complaint, Defendants admit that on June 13, 2025,

14  Plaintiff and John-Muyiwa spoke on the phone with one another.  Defendants deny that John-Muyiwa's

15  intention in that call was to "befriend" Plaintiff and further deny that he suggested drinks once the dust

16  settled.  Defendants deny that John-Muyiwa claimed to "respect" Plaintiff because of Plaintiff's exposure

17  of John-Muyiwa's alleged financial abuse. Defendants admit that John-Muyiwa proposed a formal

18  separation agreement during the call, including a 3-month consulting agreement. To the extent this

19  paragraph contains any other factual allegations that have not already been denied, Defendants deny each

20  and every factual allegation contained in said paragraph.

21      60.    Answering Paragraph 60 of the Complaint, Defendants deny the allegations in said

22  paragraph. Defendants assert that Plaintiff opened the June 14, 2025 call by stating that the proposed

23  separation agreement was "not exciting" to him.  Plaintiff insisted that his counsel and Astronaut's counsel

24  engage in  "price discovery" of the Company's stock.  When John-Muyiwa pushed back, Plaintiff

25  threatened to take down the Company if he could not receive $1.5 million. To the extent this paragraph

26  contains any other factual allegations that have not already been denied, Defendants deny each and every

27  factual allegation contained in said paragraph.

28

61.     Answering Paragraph 61 of the Complaint, Defendants admit that the special board meeting on June 16, 2025 was cancelled to allow for counsel for Astronaut and Plaintiff to finalize the separation agreement.  Defendants deny that any of their actions amounted to obstruction. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

62.     Answering Paragraph 62 of the Complaint, Defendants admit that on June 24, 2024, Astronaut's counsel shared the separation terms with Plaintiff's attorney. To the extent this paragraph contains any other factual allegations, Defendants deny each and every factual allegation contained in said paragraph.

63.     Answering Paragraph 63 of the Complaint Defendants deny the allegations in said paragraph.

64.     Answering Paragraph 64 of the Complaint, Defendants admit that on July 1, 2025, Astronaut's counsel contacted Plaintiff's legal representative.  Defendants deny that Astronaut's counsel made any mention regarding the "relevance of the expenses review."  Defendants assert Astronaut's counsel stated that Plaintiff still controlled and needed to transfer back Astronaut's critical software infrastructure.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

65.     Answering Paragraph 65 of the Complaint, Defendants deny the allegations in said paragraph. Defendants assert that Plaintiff did not transfer all services, code, and other work product back to Astronaut on July 2, 2025.  Defendants assert that as of July 17, 2025, Plaintiff still retained access to critical Company systems.

66.     Answering Paragraph 66 of the Complaint, Defendants admit on July 17, 2025, Astronaut's counsel shared an accounting report (Expense Review Report) with Plaintiff's counsel. The report read "There are no findings of urgent or severe concern and in our expense review nothing major stands out as exceptional. Based on Fondo's broad experience doing accounting and bookkeeping work for similar size startup companies, we didn't notice any unusual spending patterns or spending types compared similar companies we work with regularly. Subscriptions, payroll, travel expenses, are generally in line with peers." Defendants deny that the report was only a superficial examination and that the investigation

tellingly avoided inquiry into 2024. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

67.    Answering Paragraph 67 of the Complaint, Defendants deny that any fallout continued between Plaintiff and Defendants.  Defendants admit that on July 23, 2025, Clarence Bethea resigned from Astronaut's Board of Directors.  Defendants deny that a fallout continued. To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

68.    Answering Paragraph 68 of the Complaint, Defendants admit Plaintiff and John-Muyiwa spoke on the phone on July 24, 2025.  Defendants deny that John-Muyiwa confessed to the alleged damage he had caused to Astronaut, to hurting people, tarnishing reputations, and dragging down investors. Defendants deny that John-Muyiwa begged Plaintiff to "named his terms."  Defendants deny that Plaintiff informed John-Muyiwa that he needed to resign and that Plaintiff offered to take the reins to restore Astronaut's value.  Defendants assert that during this call, Plaintiff expressed an interest in working on Voice AI, a technology unrelated to Astronaut's immediate plans, and requested that John-Muyiwa grant Plaintiff control of Astronaut's money and resources to fund his new vision.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

69.    Answering Paragraph 69 of the Complaint, Defendants admit that Plaintiff texted John-Muyiwa on July 28, 2025 following up on what John-Muyiwa decided with respect to their conversation last week.  Plaintiff also stated that Astronaut's counsel had reached out and that he planned to respond to him by the end of the day. Defendants deny that Plaintiff "he would contact his lawyer if [John-Muyiwa] didn't respond."  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

70.    Answering Paragraph 70 of the Complaint, Defendants admit that John-Muyiwa on behalf of Astronaut sent Plaintiff an email formally notifying Plaintiff of his termination and repurchase of his unvested shares. Defendants admit as to requesting that Plaintiff return all Astronaut-owned property in his possession. Defendants deny that the termination was devoid of explanation, justification, cause,

rationale, and basic decency.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

71.    Answering Paragraph 71 of the Complaint, Defendants deny the allegations in said paragraph.  Plaintiff remains an Astronaut shareholder.

## FIRST CAUSE OF ACTION

72.    Answering Paragraph 72 of the Complaint, Defendants also incorporate and reference their admissions or denials to the above Paragraphs 1 through 71.

73.    Answering Paragraph 73 of the Complaint, Defendants admit the allegations in said paragraph

74.    Answering Paragraph 74 of the Complaint, Defendants deny the allegations in said paragraph.

75.    Answering Paragraph 75 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations, and on that basis, deny each and every factual allegation contained in said paragraph.

76.    Answering Paragraph 76 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations, and on that basis, deny each and every factual allegation contained in said paragraph.

77.    Answering Paragraph 77 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations, and on that basis, deny each and every factual allegation contained in said paragraph.

78.    Answering Paragraph 78 of the Complaint, Defendants deny the allegations in said paragraph.

79.    Answering Paragraph 79 of the Complaint, Defendants deny the allegations in said paragraph.

80.    Answering Paragraph 80 of the Complaint, Defendants deny the allegations in said paragraph.

81.    Answering Paragraph 81 of the Complaint, Defendants deny the allegations in said paragraph.

ANSWER TO COMPLAINT; COUNTER CLAIMS; DEMAND FOR JURY TRIAL    CASE NO. 4:25-cv-0789-KAW

**SECOND CAUSE OF ACTION**

82.    Answering Paragraph 82 of the Complaint, Defendants also incorporate and reference their admissions or denials to the above Paragraphs 1 through 81.

83.    Answering Paragraph 83 of the Complaint, Defendants admit the allegations in said paragraph.

84.    Answering Paragraph 84 of the Complaint, Defendants admit that Plaintiff was informed of his termination by John-Muyiwa via email on July 31, 2025.  Defendants deny that the termination was abrupt, unexplained, and in retaliation.  To the extent this paragraph contains any other factual allegations that have not already been denied, Defendants deny each and every factual allegation contained in said paragraph.

85.    Answering Paragraph 85 of the Complaint, Defendants deny the allegations in said paragraph.

86.    Answering Paragraph 86 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph regarding Plaintiff's beliefs, and on that basis, deny each and every related factual allegation contained in said paragraph.

87.    Answering Paragraph 87 of the Complaint, Defendants deny the allegations in said paragraph.

88.    Answering Paragraph 88 of the Complaint, Defendants deny the allegations in said paragraph. To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.

89.    Answering Paragraph 89 of the Complaint, Defendants deny the allegations in said paragraph. To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.

90.    Answering Paragraph 90 of the Complaint, Defendants deny the allegations in said paragraph. To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.

//

//

ANSWER TO COMPLAINT; COUNTER CLAIMS; DEMAND FOR JURY TRIAL    CASE NO. 4:25-cv-0789-KAW

**THIRD CAUSE OF ACTION**

91.    Answering Paragraph 91 of the Complaint, Astronaut incorporates and references the admissions or denials to the above Paragraphs 1 through 90.

92.    Answering Paragraph 92 of the Complaint, Defendants admit the allegations in said paragraph.

93.    Answering Paragraph 93 of the Complaint, Defendants deny the allegations in said paragraph.

94.    Answering Paragraph 94 of the Complaint, Defendants deny the allegations in said paragraph.

95.    Answering Paragraph 95 of the Complaint, Defendants deny the allegations in said paragraph.

96.    Answering Paragraph 96 of the Complaint, Defendants deny the allegations in said paragraph.

97.    Answering Paragraph 97 of the Complaint, Defendants deny the allegations in said paragraph. To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.

**FOURTH CAUSE OF ACTION**

98.    Answering Paragraph 98 of the Complaint, Defendants incorporate and reference its admissions or denials to the above Paragraphs 1 through 97.

99.    Answering Paragraph 99 of the Complaint, Defendants deny the allegations in said paragraph.

100.    Answering Paragraph 100 of the Complaint, Defendants deny the allegations in said paragraph.

101.    Answering Paragraph 101 of the Complaint, Defendants lack sufficient knowledge of the facts alleged in this paragraph to admit or deny the allegations regarding Plaintiff's emotional distress, and on that basis, deny each and every related factual allegation contained in said paragraph.

102.    Answering Paragraph 102 of the Complaint, Defendants deny the allegations in said paragraph.

103.    Answering Paragraph 103 of the Complaint, Defendants deny the allegations in said paragraph.  To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.

104.    Answering Paragraph 104 of the Complaint, Defendants deny the allegations in said paragraph.  To the extent this paragraph contains legal and not factual allegations, Defendants neither admit nor deny the allegations because the law and its application are for the Court's determination.

## AFFIRMATIVE DEFENSES

As separate and distinct defenses and/or affirmative defenses to Plaintiff's alleged claims, and each of them, Defendants, and each of them, without conceding that they bear the burden of proof as to any of them, and without in any way admitting any of the allegations of the Complaint, allege as follows:

### FIRST SEPARATE AND ADDITIONAL DEFENSE

### (Failure to State a Claim)

1.    The Complaint, and each and every claim alleged against Defendants, fails to state claims upon which relief can be granted or for which damages sought can be awarded.

### SECOND SEPARATE AND ADDITIONAL DEFENSE

### (Failure to Mitigate)

2.    Plaintiff is barred, in whole or part, from any recovery on the Complaint by reason of Plaintiff's failure to act reasonably or to use diligence to avoid and/or mitigate Plaintiff's alleged damages, if any.

### THIRD SEPARATE AND ADDITIONAL DEFENSE

### (Justification/Privilege)

3.    The Complaint, and each and every cause of action alleged against Defendants, is barred because Defendants were justified and/or privileged in doing each of the things they are alleged to have done, to such extent such things were done at all.

### FOURTH SEPARATE AND ADDITIONAL DEFENSE

### (Mixed Motive/Same Decision)

4.    Plaintiff is barred, in whole or in part, from any recovery on the Complaint, including without limitation an award of damages or an order of reinstatement, because, even if Plaintiff could

establish that retaliation was a substantial factor motivating the alleged adverse employment action, which Defendants strongly deny, Defendants had legitimate, nonretaliatory reasons which would have led it to make the same decision at the time.

## FIFTH SEPARATE AND ADDITIONAL DEFENSE

### (Legitimate Business Reasons)

5.      The Complaint, and each and every claim alleged therein, is barred because the alleged actions, omissions, and representations of Defendants were for legitimate, non-discriminatory and non-retaliatory business reasons, to the extent such things were done at all.

## SIXTH SEPARATE AND ADDITIONAL DEFENSE

### (Unclean Hands)

6.      The Complaint, and each and every claim alleged against Defendants, is barred by the doctrine of unclean hands.

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (Laches)

7.      Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE

### (Waiver and Estoppel)

8.      The Complaint, and each and every cause of action alleged therein, is barred by the doctrines of waiver and estoppel.

## NINETH SEPARATE AND ADDITIONAL DEFENSE

### (Consent/Ratification)

9.      Plaintiff's claims are barred, in whole or in part, because Plaintiff consented to and/or ratified the conduct about which they now complain.

## TENTH SEPARATE AND ADDITIONAL DEFENSE

### (Punitive Damage)

10.      Plaintiff's demand for punitive damages violates Defendants' right to protection from excessive fines as provided by the Eighth Amendment of the United States Constitution and Article I, Section 17 of the Constitution of the State of California, and violates Respondent's right to substantive due

18

process as provided by the Fifth and Fourteenth Amendments of the United States Constitution and California Constitution.

## ELEVENTH SEPARATE AND ADDITIONAL DEFENSE

### (At-Will Employment)

11.    Plaintiff was an at-will employee so Defendants could terminate Plaintiff's employment at any time and for any reason whatsoever, without cause or advance notice.

## TWELFTH SEPARATE AND ADDITIONAL DEFENSE

### (Offset/Setoff)

12.    Defendants are entitled to an offset or setoff for all funds that Plaintiff owes to Defendants, whether by breach of Plaintiff's duties to Defendants or otherwise.

## THIRTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Statute of Limitations)

13.    Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to Cal. Code of Civil Procedure §§ 338(a), 339(1), Cal. Labor Code § 1197.5(i), Cal. Gov. Code § 12960(e), and Cal. Gov. Code § 12965.

## FOURTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Reservation of Rights)

14.    Defendants reserve the right to raise additional defenses, affirmative or otherwise, upon further investigation and discovery into the matters alleged.

## FIFTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Good Faith)

15.    The Complaint, and each and every cause of action alleged against Defendant, is barred because Plaintiff was treated fairly and in good faith by Defendant, and all actions taken with regard to Plaintiff were taken for lawful business reasons and in good faith.

//

//

//

## SIXTEENTH SEPARATE AND ADDITIONAL DEFENSE

### (Failure to Mitigate)

16.     Plaintiff is barred, in whole or part, from any recovery on the Complaint by reason of his failure to act reasonably or to use diligence to avoid and/or mitigate his alleged damages, if any.

WHEREFORE, having fully answered, Defendants pray that this Court dismiss Plaintiff's Complaint in its entirety with prejudice, with costs including reasonable attorneys' fees, and such other relief as may be appropriate and as ordered by this Court.

## COUNTERCLAIMS

Counter-claimant Astronaut, Inc. ("Astronaut" or the "Company"), by and through its attorneys, brings these counterclaims against counter-defendant Chris Volzer ("Volzer"). Astronaut alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has personal jurisdiction over Volzer because he lived in San Francisco, California, during the events giving rise to the instant action in this judicial district, thereby submitting himself to the Court's jurisdiction, and jurisdiction pursuant to 28 U.S.C. § 1368.

2.     Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district. During all relevant times, Volzer worked in San Francisco, California, and Astronaut is headquartered in this judicial district.

### INTRADISTRICT ASSIGNMENT

3.     Pursuant to Civil L.R. 3-2(c), this case may be assigned to the San Francisco or Oakland Divisions of the Northern District of California because a substantial part of the events giving rise to the claim occurred in San Francisco, California.

### PARTIES

4.     Astronaut is a Delaware corporation conducting business in California, with its principle place of business in the State of California.

5.     Volzer, is an individual, who on information and belief resided in San Francisco, California, and who was a co-founder and employee of Counter-claimant Astronaut.

**FACTS**

6.     Astronaut is a business to business customer support platform that helps companies improve customer engagement by providing faster response time, better support and improved retention using artificial intelligence and other features to provide instant context on conversations, automatically route messages, and identify frequently asked questions to help customer service teams be more efficient and effective.

7.     Ayoola John-Muyiwa ("John-Muyiwa") and Volzer co-founded Astronaut.

8.     From October 4, 2021 through January 21, 2022,  John-Muyiwa and Volzer worked as co-workers.  They both worked remotely and met in person for the first time in December 2022, when Volzer invited John-Muyiwa to visit Tulum, Mexico, where Volzer was living.

9.     At the time John-Muyiwa visited Volzer in Mexico, Volzer was developing a scuba diving app called "DiveZoo."

10.     John-Muyiwa created the concept for Astronaut and shared his ideas with Volzer between February and April 2023 and recruited Volzer, an engineer, to build out the product for the Company.

11.     Astronaut was incorporated on April 19, 2023.  John-Muyiwa was elected to serve as Chief Executive Officer, President, Chief Financial Officer, Treasurer, and Secretary.  Volzer served as a member of the board of directors.

12.     Volzer was hired by Counter-claimant Astronaut in April 2023. As a condition of his employment, Volzer signed the Confidential Information and Invention Assignment Agreement ("CIIA"), which was effective April 23, 2023, where he agreed that at all times during the term of his employment with Astronaut and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company to the extent necessary to perform his obligations to the Company, and not to disclose to any person, firm, corporation or other entity, without written authorization from the Company in each instance, any confidential information that he obtained, accessed or created during the term of the employment relationship.  Volzer further agreed not to make copies of Astronaut's confidential information except as authorized by the Company and that at the time of termination of employment, he would return all Astronaut property.

ANSWER TO COMPLAINT; COUNTER CLAIMS; DEMAND FOR JURY TRIAL    CASE NO. 4:25-cv-0789-KAW

13.     Astronaut leased an office in San Francisco from January 16, 2025 to July 31, 2025, where John-Muyiwa and Volzer collaborated on product development.   During Volzer's employment with Astronaut, he used Company's credit card for his transportation to and from his place of residence in San Francisco to the office. Volzer also reimbursed himself for moving expenses when he moved out of an Airbnb to his then girlfriend's apartment in San Francisco.

14.     While attending an industry conference during the week of February 23 2025, in Denver, Colorado, John-Muyiwa confirmed strong customer demand for the Company's latest product, "Superhuman for telegram" also known as "Supergram" and informed Volzer of this information. On March 10, 2025, John-Muyiwa and Volzer decided to build Supergram. On March 13, 2025,  John-Muyiwa designed and built a prototype of Supergram, shipping the code to the Company's Github repository.  John-Muyiwa immediately began to demonstrate and pre-sell the prototype to prospective customers. Despite the clarity on product, and demand pressure from customers for the product to be delivered as soon as possible, Volzer failed to begin developing the product until April 8, 2025, after week and a half vacation with his girlfriend. On March 24, 2025, Volzer set up an engineering execution tracker to track development progress on the Supergram product. While John-Muyiwa worked to build a pipeline of customers for the new product, Volzer stopped showing up to the office and began to self-isolate to "improve his productivity".  The last contribution Volzer made to Astronaut's GitHub code repository was on May 15, 2025, and he completed only three (3) out of fifty-four (54) tickets related to developing the new product.

15.     On April 16, 2025, at the Company's quarterly board meeting, the directors agreed to focus on 3 priorities for the quarter: (1) launching Supergram beta with first 3 customers; (2) Build pipeline of forty (40) or more qualified prospects; and  (3) complete multiple product iteration cycles based on feedback.  Instead of working to further Astronaut's goal and interests, Volzer's worked on a personal project jeopardizing Astronaut's  commitment to the board, shareholders, and customers.

16.     On May 16, 2025 Volzer sent a text to John-Muyiwa stating,  "I think I'd find it helpful if we could open up some space to talk freely about our feelings during this time. These long periods of time where I'm building take a lot of energy and motivation, and while it helps my productivity to go at it solo, it definitely feels isolating at times. And just to make sure that I'm clear, I know this was our decision and

I'm not blaming either of us. Only expressing that it feels challenging and I think it'd help to talk about it, and you're the only person that'd understand." John-Muyiwa agreed to meet when Volzer returned from his trip to Ohio to visit his family. On Monday, May 19 2025, Volzer and John-Muyiwa met in Oakland, California. During the four (4) hour meeting, they discussed various topics including Volzer's burnout, and his desire to separate from Astronaut so he could move to Hawaii with his girlfriend and live on the beach. Volzer also expressed pessimism about the Company's prospects. John-Muyiwa reminded Volzer that the Company had just closed substantial financing five (5) months prior and had a pipeline of more than twenty (20) companies that had been qualified for the upcoming product launch and advised Volzer of three prospective customer meetings scheduled the very next day. John-Muyiwa advised Volzer that the Company's stalled growth was due to Volzer's recent slowdown in engineering velocity and product launch delays. Volzer immediately called an Uber, and left the meeting.

17.    On May 20, 2025, Volzer and John-Muyiwa met and Volzer opened the discussion advising he wanted to resign from Astronaut.  John-Muyiwa verbally accepted his resignation. John-Muyiwa asked Volzer to help hire a replacement software engineer and transition his institutional knowledge. Volzer also agreed to stay until the Company shipped the new, highly anticipated product. Supergram, to customers but asked that he receive an increase in salary for a few months to extract extra money from Astronaut before his exit. John-Muyiwa, declined the request and instead proposed that Astronaut repurchase Volzer's vested shares.  Volzer agreed.

18.    On May 21, 2025 Volzer sent a text to John-Muyiwa asking to be added to Astronaut Carta account," which John-Muyiwa did.

19.    On May 24, 2025 Volzer and John-Muyiwa met again to discuss Volzer's departure from Astronaut.  Volzer suggested requesting an Independent 409A valuation to ascertain the value of his vested shares. John-Muyiwa agreed.

20.    On June 4, 2025, the Company received the 409A valuation report and John-Muyiwa sought and received approval from the board of director's to make Volzer an offer for his vested shares. On Jun 5, 2025 at 1:08 PM PT, John-Muyiwa reached out to Volzer to schedule a phone call.

21.    On June 5, 2025, John-Muyiwa informed Volzer that the 409A valuation valued the Company's common shares at $0.04 per share.

22.    That same day, Volzer texted John-Muyiwa requesting a copy of the 409A valuation report. Based on the 409A valuation report, Volzer's vested shares were worth $60,000.

23.    On June 11, 2025, John-Muyiwa sent Volzer a message stating, "On 19 May 2025, you told me you intend to step down from your role at Astronaut. To keep the product on track, I'm starting a interim CTO search and need to formalize your transition.  Please complete the following by Thursday, 12 June, 5 pm PT:   Send a signed resignation letter dated 30 Jun 2025 by Thu 12 Jun, 5 pm PT;   Provide full admin/owner access to all infrastructure, repos, and credentials by Thu 12 Jun, 5 pm PT."  Volzer did not provide passwords necessary to transfer administrative rights to Astronaut as requested until July 2, 2025, which resulted in halting Company revenue.

24.    On June 13, 2025, Chris Volzer and John-Muyiwa discussed the terms of a proposed separation agreement.  Volzer agreed to think about it and speak again the next day.

25.    On June 14, 2025, Volzer advised John-Muyiwa that he was not excited about the proposed severance offer and advised his legal representative needed to engage in "price discovery" the vested stock. John-Muyiwa reminded Volzer that Astronaut was not legally obligated to re-purchase his vested shares. In response Volzer threatened to "take down the Company" if he couldn't get the $1.5 million he felt like he was "owed."

26.    On June 24, 2025, a separation agreement was sent to Volzer's legal representative.

27.    Also, on June 24, 2025, Astronaut engaged an accounting firm to conduct an independent review of its expenses due to allegations by Volzer that John-Muyiwa charged unnecessary expenses to Astronaut.  The auditor found there were no urgent or severe concerns and that nothing major stood out as exceptional.

28.    On July 23, 2025, an inquiry was made to Volzer to determine if he planned to resign from Astronaut's board of directors.

29.    The next day on July 24, 2025, Volzer demanded that John-Muyiwa give him control of the Company's finances and resources to fund Volzer's new vision, Voice AI.

30.    On July 29, 2025, Volzer demanded Astronaut pay him $1.5 million for his vested shares in the Company that were valued substantially lower.

31.    On July 31, 2025, Astronaut terminated Volzer's employment and elected to exercise its

**ANSWER TO COMPLAINT; COUNTER CLAIMS; DEMAND FOR JURY TRIAL    CASE NO. 4:25-cv-0789-KAW**

right to repurchase all Volzer's unvested shares pursuant to Section 3(a) of the Restricted Stock Purchase Agreement dated April 23, 2023, between Volzer and Astronaut, as amended by agreement dated December 26, 2024.  Astronaut also demanded that Volzer return all Company-owned property in his possession per the terms of the Confidentiality Agreement, which Volzer has refused to honor.  Volzer continues to possess Astronaut property.

**FIRST COUNTERCLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**
**(BY COUNTER-CLAIMANT ASTRONAUT AGAINST COUNTER-DEFENDANT VOLZER)**

32.    Volzer entered into the CIIA with Astronaut, as a condition of his employment with the Company.  Paragraph 4 of the CIIA provides:

> Company Property; Returning Company Documents. I acknowledge and agree that I have no expectation of privacy with respect to the Company's telecommunications, networking or information processing systems (including, without limitation, files, e-mail messages, and voice messages) and that my activity and any files or messages on or using any of those systems may be monitored or reviewed at any time without notice. I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. I agree that, at the time of termination of the Relationship, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, materials, flow charts, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to the Relationship or otherwise belonging to the Company, its successors or assigns.

33.    At the time of termination of Volzer's employment with the Company, Astronaut demanded that Volzer return all Company property.  To date Volzer has refused to return Astronaut's property contrary to the CIIA he signed.

34.    Volzer's breach of the CIIA has harmed Astronaut.

35.    Volzer's breach of contract was substantial factor in causing Astronaut's harm.

**SECOND COUNTERCLAIM FOR RELIEF**
**(BREACH OF DUTY OF LOYALTY)**
**(BY COUNTER-CLAIMANT ASTRONAUT AGAINST COUNTER-DEFENDANT VOLZER)**

36.    Astronaut hereby realleges all allegations of this Counterclaim as if fully set forth herein.

37.    As an employee, co-founder and board member, Volzer  owed a fiduciary duty of loyalty to Astronaut.

38.    Volzer breached his fiduciary duty of loyalty when: (1) he ceased developing Astronaut's concepts and products while he was being paid by the Company and instead focused on his own personal pursuits developing applications and concepts not benefitting the Company; (2) he charged the Company for is transportation to and from the office while working in San Francisco, California; and (3) he used Company funds to move into his then girlfriend's San Franciso residence; (4) he refused to transfer administrative right to Company to software infrastructure by June 12, 2025, and instead failed to comply with the request until July 2, 2025, halting Company revenue, and; (5) he used Company funds for his personal use to develop applications and concepts that did not benefit the Astronaut.

39.    Volzer owed Astronaut a duty of loyalty during his employment with Astronaut and as a board member of the Company.

40.    Volzer breached the duty of loyalty when he refused to continue developing Astronaut's concepts and products during his employment and charged the Company for his personal transportation,

41.    Volzer conduct damaged Astronaut financially and caused harm to its business reputation.

### THIRD COUNTERCLAIM FOR RELIEF
### (CONVERSION)
### (BY COUNTER-CLAIMANT ASTRONAUT AGAINST COUNTER-DEFENDANT VOLZER)

42.    Astronaut realleges each allegation contained in the preceding paragraphs and incorporates them by this reference as though fully set forth herein.

43.    Conversion is the wrongful exercise of dominion over the property of another.

44.    At all relevant times, Astronaut owned property it entrusted to Volzer during his employment with the Company (including but not limited to a laptop and headphones) as alleged herein.

45.    Volzer substantially interfered with  Astronaut's property as alleged herein by knowingly and/or intentionally taking possession and control and refusing to return the property even after the Company demanded its return.

46.    Volzer's failure to return caused harm to Astronaut and is entitled to, and does seek, all damages available under common law.

**FOURTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION [BUSINESS AND PROFESSIONS CODE §17200, ET SEQ.]**
**(BY COUNTER-CLAIMANT ASTRONAUT AGAINST COUNTER-DEFENDANT VOLZER)**

47.     Astronaut realleges each allegation contained in the preceding paragraphs and incorporate them by this reference as though fully set forth herein.

48.     Volzer has committed all of the aforesaid acts willfully, maliciously, and oppressively, without regard to Astronaut's legal, contractual, and exclusive proprietary rights.

49.     Volzer's acts and practices as detailed above constitute acts of unlawful, unfair,   or fraudulent business acts and practices within the meaning of California Business and Professions Code §17200.

50.     Pursuant to California Business and Professions Code §17203, Astronaut seeks an order from this Court prohibiting Volzer from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth herein.

51.     Astronaut has incurred and will continue to incur attorney fees in enforcing the rights described herein and seek recovery of their attorney fees incurred pursuant to Code of Civil Procedure §1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, Counter-Claimant Astronaut prays that this Court enter judgment in its  favor and against Counter-Defendant Volzer as follows:

WHEREFORE, Counter-Claimant Astronaut prays for relief as follows:

1.  For general damages according to proof;

2.  For special damages in amounts according to proof;

3.  For exemplary and punitive damages in amounts according to proof;

4.  For restitution and/or disgorgement of amounts paid to Volzer during the time in which he breached his fiduciary duties to the Company;

5.  For attorneys' fees and cost.

//

//

## DEMAND FOR JURY TRIAL

Defendants Astronaut, Inc. ("Astronaut" or the "Company") and Ayoola John-Muyiwa ("John-Muyiwa") (collectively "Defendants") hereby demand a jury trial on all issues so triable on Plaintiff Chris Volzer's Complaint.   Counter-Claimant Astronaut hereby demands a jury trial on all issues so triable on its counterclaims against counter-defendant Chris Volzer.


Dated: November 7, 2025

Respectfully submitted,

**SV EMPLOYMENT LAW FIRM PC**


By: _/s/ Barbara L. Harris Chiang_
　　　Steven L. Friedlander
　　　Barbara L. Harris Chiang

Attorneys for Defendant and Counter-Claimant
ASTRONAUT, INC. and Defendant
AYOOLA JOHN-MUYIWA